# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 16 2020, 9:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lydia Golten
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kari A. Spray,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 16, 2020

Court of Appeals Case No.
20A-CR-1165

Appeal from the Jackson Circuit Court

The Honorable Richard Poynter, Judge

Trial Court Cause No.
36C01-1807-F6-309

**Crone, Judge.**

# Case Summary

[1] Kari A. Spray appeals the trial court's revocation of her probation. She contends that the trial court abused its discretion in revoking her probation because the State presented insufficient evidence to support a finding that she violated her probation. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

[2] In July 2018, the State charged Spray with two counts of level 6 felony performing sexual conduct in the presence of a minor. On June 11, 2019, pursuant to a plea agreement, she pled guilty to an amended count of level 6 felony neglect of a dependent in exchange for dismissal of the other charges. The trial court imposed a fully suspended one-year sentence which, after credit for time served, resulted in a sentence of 361 days of supervised probation.

[3] A few days later, on June 14, 2019, Jackson County law enforcement officers responded to a call from a home on North Cedars Road. The home was occupied by Spray's ex-husband Shane and his new girlfriend Amber Schrader. Schrader owned the home and lived there with Shane. Shane called police stating that Spray had come to the door of the home looking for their two children. Spray was also in Schrader's driveway without permission and looked through the windows of the the car parked in the driveway. When officers arrived, they located Spray and spoke with her in the roadway outside the home. Spray admitted that she had been on Schrader's property, but she continued to argue with officers and refused to leave the area. She wanted the

officers to investigate Shane, and to look in the car in the driveway where she claimed she had seen open containers of alcohol. Spray is well known by Jackson County law enforcement and had been previously warned, after prior entries onto Schrader's property without permission, that Schrader did not want her on the property, and that she would be charged criminally if she entered the property again.

[4] That same day, Spray made seven calls to the Jackson County 911 line. In the first call, Spray asked if someone could be sent to the North Cedars Road address to check on her children, whom she believed were there. The operator agreed to send authorities to that address for a welfare check. Spray proceeded to make six additional 911 calls within less than one hour. Due to the repeated calls, an officer was sent to Spray's house to speak with her, but she refused to open the door. In her third, fourth, and fifth calls, Spray sat silently on the open line and said nothing to the 911 operator. In her sixth call, Spray again asked about her children, and the operator told her repeatedly that the children had been checked on and that they were fine. Spray called a seventh time with the exact same inquiry.

[5] Spray was subsequently charged with class A misdemeanor criminal trespass and class A misdemeanor unlawful use of 911 service. Thereafter, on June 28, 2019, the State filed a petition to revoke Spray's probation based upon her commission of two new criminal offenses. Following a revocation hearing, the trial court found that Spray violated the terms of her probation as alleged by the

State. The trial court ordered Spray to serve 180 days of her previously suspended sentence in the appropriate penal facility. This appeal ensued.

## Discussion and Decision

[6] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). We review probation violation determinations for an abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law. *Id*.

[7] Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition of probation occurred. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). Second, the court must determine if the violation warrants revocation of probation. *Id*. "A revocation hearing is in the nature of a civil proceeding, and the alleged violation only needs to be established by a preponderance of the evidence." *Smith v. State*, 727 N.E.2d 763, 765 (Ind. Ct. App. 2000).

> In reviewing the sufficiency of the evidence, we use the same standard as in any other sufficiency question. When the appellant challenges the sufficiency of the factual basis for revocation, we neither reweigh the evidence nor judge the credibility of the witnesses. If substantial evidence of probative value supports the trial court's decision that the appellant has committed a violation of a condition of his probation, then revocation of probation was proper.

*Id.* (citations omitted). In short, "[i]f there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation." *Woods*, 892 N.E.2d at 639-40.

[8] Spray challenges the State's proof, and the trial court's finding, that she violated her probation by committing the new criminal offenses of criminal trespass and unlawful use of 911 service. When the State alleges that the defendant violated probation by committing a new criminal offense, the State is required to prove—by a preponderance of the evidence—that the defendant committed the offense. *Heaton*, 984 N.E.2d at 617.

[9] Indiana Code Section 35-43-2-2 provides that a person who, not having a contractual interest in the property, "knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent" commits class A misdemeanor criminal trespass. Here, Jackson County Sheriff's Department Deputy Jesse Hutchinson testified that he responded to the June 2019 report that Spray had entered Schrader's property and knocked on the door of Schrader's home. Although Spray was no longer on the property when officers arrived, she admitted to Deputy Hutchison that she had entered the property and that she had taken a picture while in the driveway. Deputy Hutchison stated that Spray had entered the property without permission on prior occasions and that Jackson County law enforcement officers had specifically warned Spray that Schrader did not want her on the property, and that she would be charged criminally if she entered the

property again. This evidence is sufficient to support the trial court's conclusion by a preponderance of the evidence that Spray committed class A misdemeanor criminal trespass.

[10] Although proof of a single violation is sufficient to permit a revocation of probation, *Beeler v. State*, 959 N.E.2d 828, 830 (Ind. Ct. App. 2011), *trans. denied*, we further find that the State presented sufficient evidence to support the trial court's conclusion by a preponderance of the evidence that Spray committed a second probation violation in committing class A misdemeanor unlawful use of 911 services. Indiana Code Section 36-8-16.7-46 provides that a person who knowingly or intentionally places a 911 call "for a purpose other than obtaining public safety assistance or emergency services" or "to avoid communications service charges or fees" commits a class A misdemeanor. The record here demonstrates that Spray placed seven 911 calls on the same day in the span of one hour. Although she requested assistance during her first call, during her second call she only inquired about the officer that was sent to her home. During her third, fourth, and fifth calls, Spray simply sat on the open line and said nothing. During her sixth and seventh calls, Spray continued to question the operator about matters that had already been discussed and resolved. Based upon the foregoing, the trial court could have reasonably concluded by a preponderance of the evidence that at least one of Spray's repeated 911 calls was made for a purpose other than obtaining public safety assistance or emergency services. Indeed, the multiple calls in which she simply sat on the open line and said nothing support such a conclusion regarding an

alternate purpose. Spray's contrary assertion on appeal regarding her purpose is merely an invitation for this Court to reweigh the evidence and reassess credibility, and we will not.

[11] In sum, sufficient evidence supports the trial court's conclusion by a preponderance of the evidence that Spray violated her probation by committing two new criminal offenses. Therefore, the trial court did not abuse its discretion in revoking Spray's probation.

[12] Affirmed.

Najam, J., and Riley, J., concur.